**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

JAMES M.J. LATTIMORE, )
)  Case No. 3:26-cv-351
*Plaintiff*, )
)  Judge Travis R. McDonough
v. )
)  Magistrate Judge Jill E. McCook
TENNESSEE DEPARTMENT OF )
CORRECTIONS, *et al.*, )
)
*Defendants*. )

---

**MEMORANDUM AND ORDER**

---

Plaintiff James M.J. Lattimore, a prisoner in the custody of the Tennessee Department of Correction ("TDOC") currently housed at the Northeast Correctional Complex ("NECX"), filed a motion for leave to proceed *in forma pauperis* (Doc. 1) and a pro se complaint under 42 U.S.C. § 1983 (Doc. 2). For the reasons set forth below, the Court will **GRANT** Plaintiff's motion, **PERMIT** Plaintiff's religious-rights claims to proceed against Defendants in their official capacities, and **DISMISS** all remaining claims.

**I.    MOTION TO PROCEED IN FORMA PAUPERIS**

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee. *See* 28 U.S.C. § 1915(a). It appears from Plaintiff's motion that he lacks the financial resources to pay the filing fee in a lump sum. Accordingly, pursuant to 28 U.S.C. § 1915, this motion (Doc. 1) is **GRANTED**.

Plaintiff is **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee 37902 as an initial partial payment, whichever is the

greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account shall submit twenty percent (20%) of his preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this fee-collection procedure, the Court **DIRECTS** the Clerk to (1) mail a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and (2) furnish a copy of this Memorandum and Order to the Court's financial deputy. This Memorandum and Order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II.     PLRA SCREENING

### A.     Standard

Under the PLRA, district courts must screen prisoner complaints and sua sponte dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). Thus, to survive an

2

initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

### B.      Allegations of Complaint

In March 2026, Nation of Islam ("NOI") sponsor, Brother Eric Muhammad, was sent an email informing him that the NOI's "Saviours['] Day/Eid feast was cancelled" (Doc. 2, at 3, 8–9).

On April 27, 2026, TDOC Commissioner Frank Strada, Assistant Commissioner Linda Thomas, Warden Brian Eller, Acting Warden of Treatment ("AWT") Steven Andrews, and Chaplain Widener "conspired to violate TDOC policy 118.01, 116.08"; the First Amendment; and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by refusing to allow NOI members to receive halal foods provided by NOI certified volunteers for the Eid al-Fitr feast (*id.* at 4). The main compound was on lockdown due to a race riot, but ten NOI members were at the Annex (*id.*). These Defendants have denied NOI members their dinners for the Holy Day of Atonement, Saviours' Day, Eid al-Adha, and Eid al-Fitr (*id.*).

Certain NOI "Holy Days" are not included in TDOC policy 116.08 as religious meals (*id.*).

On March 4, 2026, Defendants Strada and Thomas failed to provide NOI members with religious materials on ViaPath tablets (*id.* at 5, 10–11). They have provided NOI members only one book, while "all other religious material [is] on the[re]" (*id.* at 5). NOI members should be allowed to purchase NOI materials (*e.g.*, various books, audio, and videos) for the tablets

through Brother Muhammad (*id.* at 5).  Plaintiff has purchased all these items "out of [his] own pocket at every prison [he's] been to for 26 years"[1] (*id.*).

On May 8, 2026, Unit Manager James Cox forced Plaintiff to go work in the kitchen of the main compound rather than attend Jumah services at the annex (*id.* at 6).  When Plaintiff protested that he was a Muslim and needed to attend the service, Defendant Cox told Plaintiff, "[S]ometimes I have to miss service[,] so you will be ok with missing a service or two" (*id.*). This is retaliation because of Plaintiff's religious-rights lawsuit, filed on April 30, 2026, against Defendant Cox and other NECX staff[2] (*id.*).

NOI Friday service was cancelled for the month of July in "retaliation for the lawsuit filed April 30, 2026" (*id.*).

Aggrieved by these events, Plaintiff filed the instant action against TDOC, Brian Ellers, Steven Andrews, Maurice Widener, Frank Strada, Linda Thomas, James Cox, and James Reburn, seeking to require Defendants to (1) allow NOI volunteers to provide halal foods for feasts; (2) allow Plaintiff to purchase NOI materials for the ViaPath tablets; (3) provide equal protection to NOI members; and (4) add NOI holy days to Policy 116.08's religious meals (*id.* at 7).

---

[1] Plaintiff appears to have borrowed this statement from another source, as Plaintiff was born in 1997.  *See* Tenn. Dep't of Corr., *Felony Offender Information*, https://foil.app.tn.gov/foil/details.jsp (last visited July 24, 2026); *see also Oak Ridge Env't Peace All. v. Perry*, 412 F. Supp. 3d 786, 810 n.6 (E.D. Tenn. 2019) ("Information taken from government websites is self-authenticating under Fed. R. Evid. 902, and courts may accordingly take judicial notice of the information found on these websites." (citations omitted)).

[2] The Court presumes this is a reference to the joint complaint Plaintiff and Inmate Dwayne X. Cross filed in *Cross v. Tenn. Dep't of Corr.*, No. 3:26-CV-214 (E.D. Tenn.).  Plaintiff was dismissed from that lawsuit without prejudice to his ability to file suit independently (*see* Doc. 6, No. 3:26-CV-214).  *See United States v. Doss*, 563 F.2d 265, 269 n. 2 (6th Cir. 1977) (noting court may take judicial notice of its own records).

### C. Analysis

Although this action is primarily concerned with Plaintiff's religious rights under RLUIPA and the First Amendment, Plaintiff also alleges that Defendants have interfered with his equal protection rights and engaged in conspiracy and retaliation (*see generally* Doc. 2). The Court addresses these attendant matters first.

#### 1. Equal Protection

Plaintiff maintains that NOI members are not provided with equal rights to freely exercise their faith, because TDOC Commissioner Strada and Assistant Commissioner Thomas "have failed to provide" NOI members with religious materials on their ViaPath tablets, even though "all other religious material [is] on the[re]" (*see* Doc. 2, at 5). He also maintains that Unit Manager James Cox violated his equal protection rights by requiring him to go work in the kitchen instead of attending Friday Jumah services (*id.* at 6).

Plaintiff does not explain the process by which materials—religious or otherwise—are placed on ViaPath tablets, what criteria the materials must meet for placement, and the individual(s) to whom any request for materials must be made. It is unclear if Plaintiff is alleging that Defendants Strada and Thomas have personally decided that only one NOI book may be placed on the tablet, if he is alleging that some TDOC policy has been enacted that restricts NOI members' access to religious books, or if only one NOI book has been provided to prison officials for upload. It is also not clear from Plaintiff's allegations that a NOI volunteer or member has asked to obtain the religious materials for placement on the ViaPath tablets and been denied. Instead, Plaintiff has only alleged that other religious groups have more materials on the ViaPath tablets than NOI members. Such a vague allegation is insufficient to state an equal protection claim, because it is not enough that a plaintiff allege disparity of treatment between

5

himself and another similarly situated individual; a plaintiff alleging an equal protection claim must plausible allege that the difference in treatment was motivated by discriminatory purpose. *See Robinson v. Jackson,* 615 F. App'x 310 (6th Cir. 2015). If Plaintiff is in possession of any such facts, he has not disclosed them in his complaint.

Neither has Plaintiff stated an equal protection claim based on the allegation that Defendant Cox required him to go to work instead of attending Friday Jumah services. Plaintiff has not alleged that any non-NOI inmates are permitted to miss work in order to attend worship or prayer services. *See Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). Moreover, the Supreme Court has found regulations forcing inmates to miss occasional religious services due to work schedules are not per se violative of the inmates' rights where there are opportunities for the inmates to participate in other religious activities. *See, e.g. ,O'Lone v. Estate of Shabazz*, 482 U.S. 342, 351–52 (1987) (examining a free exercise claim and finding a regulation reasonable that forced Muslim inmate to miss Friday prayer services due to work schedule based, in part, on Muslim prisoners' ability to participate in other religious observances).

Therefore, Plaintiff's equal protection claims will be **DISMISSED**.

### 2. Conspiracy

Plaintiff alleges that Defendants conspired to violate TDOC policy, the Constitution, and RLUIPA by denying NOI members halal foods for their religious meal on April 27, 2026 (Doc. 2, at 4). A civil conspiracy is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (citation omitted). In order to state a claim, Plaintiff must show the existence of a single plan, that the co-conspirators shared in the general conspiratorial objective to deprive the plaintiff of a federal

right, and that an overt action was committed in furtherance of the conspiracy that injured the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). The conspiracy must be pled with particularity — vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (noting that allegations must be supported with factual allegations that render the claim "plausible," not merely "possible).

Plaintiff does not support his allegation of conspiracy with any relevant facts. Plaintiff has only "naked assertions" that there was an agreement between these Defendants to violate Plaintiff's rights, and his conspiracy claims will be **DISMISSED**. *See Twombly*, 550 U.S. at 557.

### 3. Retaliation

Plaintiff maintains that, in retaliation for filing a lawsuit, (1) Unit Manager James Cox forced Plaintiff to work in the kitchen instead of attending prayer services on May 8, 2026, and (2) NOI Friday services were cancelled in the month of July (Doc. 2, at 6). To establish a retaliation claim, Plaintiff must show that: (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two — that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

The Court presumes for present purposes that Plaintiff's allegations are sufficient to satisfy the first two elements of a retaliation claim. *See, e.g., Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) ("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf."); *Gill v. Tuttle*, 93 F. App'x 301, 304 (2d Cir. 2004)

(finding whether "continued denial of permission to attend religious callouts" constitutes adverse action a genuine issue of material fact). Nonetheless, Plaintiff's complaint is devoid of any allegations that would permit the inference that the prayer services were cancelled or that he was forced to work on a Friday because he filed a lawsuit.[3] *Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005). Thus, Plaintiff has made only "conclusory allegations of retaliatory motive 'unsupported by material facts[.]" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)). His allegations are insufficient to state viable retaliation claims, and any such claims will be **DISMISSED**.

### 4. Religious Rights

Plaintiff maintains that Defendants have cancelled scheduled religious feasts, refused to allow NOI volunteers to provide halal foods for certain religious feasts, failed to include NOI holy days in TDOC policy, failed to include/permit NOI necessary religious materials on the ViaPath tablets, and cancelled NOI services, all in violation of his rights under RLUIPA, 42 U.S.C. § 2000cc-1(a), and the Free Exercise Clause of the First Amendment, U.S. Const. amend I.

RLUIPA "applies to prisons that receive federal funds and prohibits state and local governments from placing 'a substantial burden' on the 'religious exercise' of any inmate unless they establish that the burden furthers a 'compelling governmental interest' and does so in the 'least restrictive' way." *Haight v. Thompson*, 763 F.3d 554, 559 (6th Cir. 2014) (quoting 42 U.S.C. § 2000cc-1(a)).

---

[3] And, in fact, records attached to Plaintiff's complaint indicate that NOI Friday services were cancelled for the month of July but would resume in August because the timing "was in conflict with a state issued class" (Doc. 2-1, at 11). *See Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) ("[D]ocuments attached to the pleadings become part of the pleadings[.]" (citing Fed. R. Civ. P. 10(c))).

"[T]he Free Exercise Clause of the First Amendment, applicable to the States under the Fourteenth Amendment, provides that 'Congress shall make no law. . . prohibiting the free exercise' of religion." *Fulton v. City of Philadelphia*, 593 U.S. 522, 532 (2021). To establish a free exercise violation, Plaintiff must establish that (1) the belief or practice asserted is religious within his own "scheme of things," (2) his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987) (internal citations and citation omitted).

Under both the First Amendment and RLUIPA, a prisoner must show that the challenged government action substantially burdens his religious beliefs in order to sustain a claim. *Haight*, 763 F.3d at 559; *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010); *see also Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989). And "the Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). A burden is substantial where it (1) forces an individual to choose between following the tenets of his religion and foregoing governmental benefits or (2) places "substantial pressure on an adherent to modify his behavior and to violate his beliefs[.]" *Id*. at 734.

Under the First Amendment, "the circumstances of prison life may require some restriction on prisoners' exercise of their religious beliefs" even if a religious practice is substantially burdened. *Walker*, 771 F.2d at 929. Accordingly, a prisoner's rights may be reasonably restricted to accommodate "legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). If a regulation that interferes with an inmate's constitutional rights is reasonably related to a legitimate penological interest, the courts then balance "(1) whether the prisoner possesses alternative avenues for exercising his religion; (2) whether accommodating the prisoner would

9

affect 'guards and other inmates' or 'the allocation of prison resources generally'; and (3) whether 'obvious, easy alternatives' exist that suggest 'the regulation is not reasonable.'" *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 461 (6th Cir. 2019) (quoting *Turner*, 482 U.S. at 89–91).

A correctional institution must first "articulate their interest in the regulation" to demonstrate a legitimate penological interest. *Figel v. Overton*, 121 F. App'x 642, 646 n. 2 (6th Cir., Feb. 4, 2005) (internal citations omitted). The correctional facility's burden of demonstrating its interest is "slight, and in certain instances, the connection may be a matter of common sense." *Sharp v. Johnson*, 669 F.3d 144, 156 (3d Cir. 2012). Once it does so, "the burden is on the prisoner to disprove the validity of the regulation at issue." *Id.* (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("The burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it.")).

Here, there is not enough information before the Court to determine whether the Defendants have an articulable interest in the restrictions imposed, whether those restrictions are reasonable, and whether alternate means exist to permit Plaintiff to appropriately participate in the impacted religious observances. Accordingly, the Court will permit Plaintiff's RLUIPA and Free Exercise Clause claims to **PROCEED**. *See, e.g., Arauz v. Bell*, 307 F. App'x 923, 928–29 (6th Cir. 2009) (finding free exercise claim survived initial screening where the information was insufficient to permit a full *Turner* analysis due to the lack of a response by defendants).

But against whom should the claims proceed? The TDOC is not a viable Defendant, because it is an arm of the state. *See Hix v. Tenn. Dep't of Corrs.*, 196 F. App'x 350, 355 (6th Cir. 2006). A state is a sovereign and not a "person" for purposes of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). Accordingly, the TDOC will be **DISMISSED**.

As to the remaining individual Defendants, the Court determines from the course of proceedings that Plaintiff intends to sue Defendants solely in their official capacities, as he seeks

only prospective injunctive relief. *See, e.g., Moore v. City of Harriman*, 272 F.3d 769, 772–73 (6th Cir. 2001) (noting Sixth Circuit follows a "course of proceedings" test to determine intended capacity of suit). By seeking relief against any individual Defendant in his/her official capacity, Plaintiff is actually seeking suit against the entity "of which the officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). And an exception sovereign immunity known as the *Ex parte Young* doctrine permits suit against state officials to enjoin them from continuing a constitutional violation. *Ex Parte Young*, 209 U.S. 123, 155–56 (1908). Because Plaintiff here alleges that his religious rights are being denied by unconstitutional policies and practices enacted and/or carried out by Defendants, the Court will permit Plaintiff's religious-rights claims to proceed against Defendants in their official capacities solely for prospective injunctive relief. *See Ex Parte Young*, 209 U.S. at 155–56.

## III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 1) is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk is **DIRECTED** to provide a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy;

5. Plaintiff's First Amendment and RLUIPA claims will **PROCEED** against Defendants in their official capacities for prospective injunctive relief;

6. The Clerk is **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Ellers, Widener, Strada, Thomas, Cox, and Reburn;

11

7.     Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within twenty-one (21) days of entry of this Order;

8.     At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

9.     Plaintiff is **NOTIFIED** that if he fails to timely return the completed service packets, this action will be dismissed;

10.     Defendants shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the complaint, it may result in entry of judgment by default against him or her;

11.     All remaining claims and Defendants are **DISMISSED**; and

12.     Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

    **SO ORDERED.**

                                      **/s/ *Travis R. McDonough***
                                      **TRAVIS R. MCDONOUGH**
                                      **UNITED STATES DISTRICT JUDGE**